# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **BELINDA JEAN PARRINELLO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:12CV800NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

## MEMORANDUM AND OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Belinda Jean Parrinello (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq. Plaintiff has filed a brief in support of the Complaint (Doc. 7); Defendant has filed a brief in support of the Answer (Doc. 10); and Plaintiff has filed a Reply (Doc. 11). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 13.

## I.
## PROCEDURAL HISTORY

On October 20, 2006, Plaintiff filed her application for DIB, alleging a disability onset date of October 1, 2004. Tr. 13, 189-91. Plaintiff's application was denied and she requested a hearing before an Administrative Law Judge (ALJ). Tr. 98, 110. After a hearing, in a decision dated March 23, 2009, the ALJ found Plaintiff not disabled. Tr. 13-21. Plaintiff filed a request

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

for review with the Appeals Council, which denied Plaintiff's request. Tr. 1-3. Plaintiff sought review of the Commissioner's decision in this court, which remanded the matter to the Appeals Council for consideration of evidence which had been submitted to the Appeals Council but not reviewed. Parrinello v. Astrue, 4:11CV908FRB, Doc. 12. On March 8, 2012, after considering the additional evidence, the Appeals Council denied review. Tr. 599-601. As such, the ALJ's March 23, 2009 decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step

five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel,

4

228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's

appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence.

Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

At the time of Plaintiff's alleged onset of disability she was 46 years old. She had a twelfth grade education and past relevant work as an office manager and teller. Tr. 20, 222, 229, 231. She alleged disability due to blindness in her right eye, heart problems, diabetes, glaucoma,

liver problems, a heart defect, a heart attack, vascular disease, "hear," "pad," and "pvd." Tr. 13, 189. She last worked on October 4, 2004, on which date she was terminated.

The ALJ found Plaintiff last met the insured status requirements on March 31, 2005, and she did not engage in substantial gainful employment from her alleged onset date, October 1, 2004, through the date she was last insured. The ALJ further found that Plaintiff had the severe impairments of history of benign brain tumor as a child, which was resected, with no recurrence but with residual right eye low vision just to light perception and decreased hearing in the left ear; hypertension; history of glaucoma; and history of peripheral vascular disease with claudication. The ALJ additionally found Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment through the date she was last insured; she had the RFC to perform the full range of sedentary work[2]; she was unable to perform her past relevant work; applying the Medical-Vocational Rules directly supported a finding of "not disabled," whether or not Plaintiff had transferable skills; considering Plaintiff's age, education, work experience, and RFC, there were jobs that Plaintiff could perform; and that, therefore, Plaintiff was not disabled at any time from October 1, 2004, her alleged onset date, through

---

[2] 20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185, at *7).

March 31, 2005, the date she was last insured. Tr. 10-21. Upon finding Plaintiff not disabled the ALJ noted that, since she was last insured, Plaintiff's conditions had become worse, but that he was required to focus his disability analysis on Plaintiff's medical conditions from her alleged onset date until the date she was last insured. Tr. 17.

Plaintiff argues that substantial evidence does not support the ALJ's determination that she could perform sedentary work and had the RFC for sedentary work. Plaintiff also claims the ALJ gave improper weight to the opinion of Rachel Feinberg, M.D., and to Plaintiff's Function Report; the ALJ improperly rejected Plaintiff's credibility regarding her allegation that intense back and leg pain caused her to miss work one or two days a week; and the ALJ improperly failed to consider diagnostic medical evidence as it existed after Plaintiff was last insured. For the following reasons, the court finds that the ALJ's decision is supported by substantial evidence.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of

Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

In a Function Report, which Plaintiff completed in November 2006, she stated that when she woke up, she took a shower, fed the cats, and cleaned "a little." She also stated that she prepared sandwiches, full meals, meat, vegetables, and potatoes; cooking took her a half hour to two hours; she did "some cleaning, laundry"; she did "a little mowing of grass with a riding lawn mower"; she house cleaned for two to three hours, "with resting in between"; when she mowed

the lawn, she did so for a half hour before needing to rest; she drove a car short distances and rode in a car; she could go out alone; she shopped in stores for food and clothing, two times a month for two hours or more at a time, depending on what she needed and how many times she had to rest; she watched television every day and read once a week until her eyes started hurting; and she could no longer fish as much as she did due to leg pain. Tr. 239-42.

At the hearing, Plaintiff testified that when she grocery shopped, she had to stop to sit and rest; she no longer cut grass, mopped, or changed sheets; and it took her an hour to wash dishes. She also testified that she was able to stand and take a shower. In response to questioning by the ALJ, Plaintiff testified that she could no longer do things described in the Function Report because her conditions had gotten worse, starting soon after she completed the report. The ALJ asked Plaintiff why, if she could do the things she described in the Function Report, she could not get a job, and Plaintiff's attorney responded that the activities described in the Function Report were different from working a job. Tr. 69-73. Plaintiff argues that the ALJ improperly considered the Function Report and Plaintiff's hearing testimony.

The court also notes that Plaintiff reported, on April 11, 2005, that she was "working in the garden and outside more frequently" (Tr. 312); on April 15, 2006, she reported that she gardened "almost daily," tended to animals, and mowed with a push mower (Tr. 53); and, on September 25, 2006, she reported that she was traveling every couple of weeks to Tennessee to see her mother (Tr. 357).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (ALJ

properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987).  Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001).  "Inconsistencies between [a claimant's] subjective complaints and [her] activities diminish [her] credibility."  Goff, 421 F.3d at 792).  See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).  The court finds that the ALJ properly exercised his responsibility to resolve inconsistencies between Plaintiff's hearing testimony and what she previously reported regarding her daily activities, see Pearsall, 274 F.3d at 1218, and that the ALJ's decision in this regard is supported by substantial evidence, see Gregg, 354 F.3d at 714.

**B.    Opinion of Dr. Feinberg:**

Dr. Feinberg stated in a January 20, 2009 letter that she evaluated Plaintiff on October 8, 2008.  In the letter, Dr. Feinberg related the results of a June 25, 2008 MRI, which showed post-lateral herniation at T11-12 to the right with a small extruded fragment impinging upon the conus of the cord.  She noted that after the MRI, Plaintiff was treated "in rehabilitation conservatively with epidural steroid injection and mobilization of the spine and some manual physical therapy."  She further noted that Plaintiff made "some improvement but failed to

progress in the spinal pain."  Dr. Feinberg opined that Plaintiff could not stand for more than 10 to 15 minutes, and that Plaintiff was "permanently and totally disabled."  Tr. 450.

Also, pursuant to the post-hearing request of Plaintiff's attorney, Dr. Feinberg reviewed Plaintiff's medical records to determine "whether there [were] reasonable medical grounds to support a finding that [Plaintiff] was totally disabled from employment prior to March 31, 2005." Tr. 652.  Dr. Feinberg stated in an August 2009 report that she reviewed Plaintiff's treatment records and diagnostic studies, and a statement from Plaintiff's employer; the medical findings in Plaintiff's records and her need for narcotic pain medication supported Plaintiff's claim that she was unable to maintain her employment; Plaintiff was "straight forward" and "not malingering"; the report from Plaintiff's former employer supported Plaintiff's claim that she was disabled since October 2004; and it was Dr. Feinberg's opinion, within a reasonable degree of medical certainty, based on Plaintiff's pathology and history, that Plaintiff was disabled from employment prior to March 15, 2005.

The letter from Plaintiff's employer, to which Dr. Feinberg referred, was from Fred Hagemeier.  The letter stated that Plaintiff had worked for him as an office manager until October 4, 2004; due to complaints of back and leg pain, Plaintiff often left work early or missed entire days; the amount of time she missed continued to increase, "usually a minimum of one or two days a week"; she was "obviously in pain and it [a]ffected her work"; Plaintiff's "excessive time missed resulted in a mutual decision for her to leave" Mr. Hagemeier's employment rather than to be terminated; and Plaintiff was "clearly no longer able to maintain her employment." Plaintiff argues Dr. Feinberg's letter establishes that she was disabled and that the final decision of the Commissioner failed to give Dr. Feinberg's letter proper weight.

First, Dr. Feinberg was not Plaintiff's treating physician during the relevant period prior to the expiration of Plaintiff's insured status, although records reflect she treated Plaintiff from October 2009 to January 2009 (Tr. 450-66); and Dr. Feinberg's opinion that Plaintiff was disabled prior to the expiration of her insured status, March 31, 2005, was based only on the records of others. As such, her opinion was not entitled to controlling weight. See 20 C.F.R. §§ 404.1527(d), (e); Lacroix v. Barnhart, 465 F.3d 881 (8th Cir. 2006) (medical opinions of "treating sources" on nature and severity of claimant's impairments are given "more weight" than non-treating sources); Chamberlain, 47 F.3d at 1494 ("Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician.").

Second, in reaching her conclusion that Plaintiff was disabled, Dr. Feinberg considered post-insured status medical reports of Plaintiff's condition, which records were not determinative of whether Plaintiff was disabled within the meaning of the Act. See Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007) (ALJ need only consider claimant's condition as of date she was last insured for purposes of determining eligibility for disability benefits). For example, in her August 2009 report, Dr. Feinberg considered a September 2007 report from David Easterly, D.O., in which Dr. Easterly stated that Doppler of both Plaintiff's lower extremities demonstrated significant stenosis, and a June 25, 2008, MRI report finding disc posterolateral herniation with a small extruded fragment impinging on the spinal cord, and desiccation and very mild posterior central disc bulge. Tr. 398. A non-disabling condition which develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of Social Security disability benefits. See Thomas v. Sullivan, 928 F.2d 255, 260-61 (8th Cir. 1991); Dunlap v. Harris, 649 F.2d 637, 639 (8th Cir. 1981).

Third, to the extent Dr. Feinberg opined that Plaintiff was disabled prior to March 31, 2005, the date she was last insured, the reports of Plaintiff's treating doctors relevant to and during this period are inconsistent with Dr. Feinberg's conclusion and support the ALJ's determination that Plaintiff had the RFC for sedentary work. See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)) ("A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'").  For example, in regard to Plaintiff's extremities, in March 2004, Bradette Z. Varilek, M.D., reported that Plaintiff had negative straight-leg raising and good mobility in her hips (Tr. 493); Plaintiff's extremities were without clubbing, cyanosis or edema in November 2003 (Tr. 370), March 2004 (Tr. 493), May 2004 (Tr. 306), and June 2004 (Tr. 365); an April 2004 peripheral arterial screen, conducted because of Plaintiff's bilateral leg pain, showed "normal resting arterial hemodynamics in both lower extremities" and "mild arterial insufficiency following exercise, consistent with mild claudication (Tr. 595); in September 2006, Plaintiff's extremities were without edema or cyanosis and peripheral neuropathy (Tr. 357); she had good muscle strength in her upper and lower extremities in November 2003 (Tr. 370); in June 2004, Plaintiff denied any pain on exam at the JFK Clinic (Tr. 305); in April and July 2005, Plaintiff's upper and lower extremity strength was 5/5 (Tr. 505, 509); and a January 2007 imaging report states that Plaintiff underwent the test due to pain in her right foot, and that there was no evidence of fracture or malalignment (Tr. 578).

As for Plaintiff's hypertension, in November 2003, Plaintiff's blood pressure was 130/84 (Tr. 483), and in June 2004, Plaintiff's blood pressure was 132/82 (Tr. 308), and in September 2006, she reported that her systolic pressure was always 120-130 at home (Tr. 357), see Murphy

v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (holding that a high blood pressure reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure which measures within the range of 140-180/90-115 is considered mild or moderate, and that hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney) (citing 20 C.F.R. pt. 404, subpt, P, app. 1, 4.00C); in June 2004, it was noted that Plaintiff was doing well on her hypertension medication and had no hypertension symptoms (Tr. 308); and in July 2005, Plaintiff's hypertension was well controlled with medication (Tr. 509), see Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (conditions which can be controlled by treatment are not disabling); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992);

As for Plaintiff's diabetes, in April 2004, Plaintiff had "pre-diabetes (Tr. 367); in June 2004, it was reported that Plaintiff was newly diagnosed with diabetes, and diet and exercise were prescribed (Tr. 309), see Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (conservative treatment and no surgery are consistent with discrediting claimant's allegation of disabling pain); in April 2005, just eleven days after the expiration of Plaintiff's March 31, 2005 insured status, Matthew Fraley, M.D., wrote that Plaintiff had been controlling her diabetes pretty well with her medication (Tr. 312); in April 2005 it was reported that Plaintiff did not take insulin (Tr. 330); and in July 2005, it was again reported that Plaintiff's diabetes was well controlled with medication, see Brown, 611 F.3d at 955.  Also, in September 2006, Plaintiff was congratulated for "doing such a great job of controlling her blood sugars."  Tr. 357.  A January 2007 imaging

report states that the test was administered because Plaintiff had abdominal pain, and that no gallbladder abnormality was found. Tr. 579.

It was noted in May 2004, that Plaintiff had mild arterial insufficiency following exercise consistent with mild claudication, but that the claudication had improved. Tr. 306. The claudication was reported as much improved with medication in June 2004. Tr. 308. A June 2004 stress test was normal (Tr. 593), and an August 2006 stress test was normal, with no evidence of myocardial ischemia (Tr. 582). The impression from an August 2006 myocardial profusion imaging report was "normal, symptom limited," and "normal left ventricular function." Tr. 585.

An August 2006 ejection fraction report states that Plaintiff's heart chambers were of normal size and had normal thickness; her left ventricle had an ejection fraction of 73% and no regional wall motion abnormalities were seen. Tr. 580. See http://www.mayoclinic.com/health/ejection-fraction/AN00360 (last visited Dec. 17, 2013) ("The left ventricle is the heart's main pumping chamber, so ejection fraction is usually measured only in the left ventricle (LV). An LV ejection fraction of 55 percent or higher is considered normal. An LV ejection fraction of 50 percent or lower is considered reduced. Experts vary in their opinion about an ejection fraction between 50 and 55 percent, and some would consider this a 'borderline' range.").

As for Plaintiff's eyesight, it was reported in April 2005, that she could not see out her right eye. Tr. 505. It was also reported in May 2005, that she had very little vision in this eye, and that her vision in the left eye was 20/20. Tr. 330. Significantly, the ALJ thoroughly considered all of the aforementioned medical records, upon determining Plaintiff's RFC.

Fourth, Dr. Feinberg's August 2009 letter did not contain any new medical evidence of Plaintiff's condition during the relevant period. Tr. 17-18. See Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007) (it is ALJ's role to evaluate record as a whole).

Fifth, to the extent Dr. Feinberg opined in her January 2009 letter that Plaintiff was disabled as of her October 8, 2008 evaluation, Plaintiff must have been disabled prior to March 31, 2005, to be disabled under the Act. See Long, 108 F.3d at 187 (when claimant is no longer insured for Title II purposes, medical evidence of her condition will only be considered as of the date the individual was last insured); Basinger, 725 F.2d at 1169.

Sixth, to the extent Plaintiff argues that the ALJ ignored surgery she had in February 2008, which she asserts failed to relieve her leg pain, and that this surgery and Dr. Feinberg's letter demonstrates she was disabled prior to the expiration of her insured status, Plaintiff's arguments are without merit. As acknowledged by the ALJ, it is uncontroverted that Plaintiff's conditions worsened after the expiration of her insured status, but, as discussed above, such worsening fails to establish she was disabled prior to the expiration of her insured status.

Seventh, upon suggesting that Plaintiff was disabled, Dr. Feinberg relied upon Plaintiff's subjective complaints as expressed to medical providers. As discussed above, the ALJ's finding that Plaintiff's subjective complaints were not entirely credible is supported by substantial evidence.

Eighth, although Dr. Feinberg opined that Plaintiff was disabled, the ultimate issue of disability is reserved for the Commissioner. See 20 C.F.R. § 404.1527(d).

Ninth, to the extent Dr. Feinberg relied on Mr. Hagemeier's letter, he was not a medical source, and his letter only related Plaintiff's subjective complaints. In conclusion, the court finds

that neither Dr. Feinberg's findings nor Mr. Hagemeier's letter establish that Plaintiff was disabled nor that the ALJ's decision is not supported by substantial evidence.

**C.      Plaintiff's Ability to Perform Sedentary Work:**

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."    SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id.  Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

As required by the Regulations and case law, as set forth above, the ALJ in this matter considered Plaintiff's physical impairments as documented in her medical records when determining her RFC.  He also considered her credibility.  See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"; Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001) (when determining whether claimant can engage in substantial employment, an ALJ must consider the combination of her mental and physical impairments).  The court has found the ALJ's consideration of Plaintiff's medical records and her credibility is based on substantial evidence.

Further, upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, the ALJ found that Plaintiff's subjective complaints were not credible and further found that Plaintiff was limited to sedentary work. The court finds that the ALJ's RFC determination is based on substantial evidence.

Consistent with the requirements of the Regulations and case law, the ALJ posed a hypothetical to a VE which included Plaintiff's limitations which the ALJ found credible and as encompassed in Plaintiff's RFC. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."). Specifically, the ALJ asked the VE to assume Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently; she could sit 6 hours and stand and walk 2 hours in an 8 hour workday; she required a sit/stand option; and she could only occasionally climb, balance, stoop, crouch, kneel, and crawl, but could never climb ladders, ropes, or scaffolds or work around moving machinery. Tr. 94.

Based on the RFC which the ALJ described, the VE testified that Plaintiff could work as a security guard/monitor, jobs that exist in significant numbers in Missouri. Tr. 95. Where a VE, in response to a hypothetical which captures the concrete consequences of a claimant's deficiencies, responds that there are readily available jobs in which the claimant can engage, the

Commissioner has met his burden to demonstrate the claimant's ability to work in the economy. See Cox v. Astrue, 495 F.3d 614, 621 (8th Cir. 2007) (citing Reed v. Sullivan, 988 F.2d 812, 815-16 (8th Cir. 1993)). The court finds, therefore, that the decision of the ALJ finding Plaintiff not disabled is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint be **DENIED**; Docs. 1, 7.

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum Opinion.

Dated this 13th Day of February, 2014.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE